JS-6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

NAVID SAFAVI,
Plaintiff,
v.
PAMELA BONDI, et al.,
Defendants.

Case No. 8:25-cv-02257-KES

ORDER DISMISSING CASE

## I. INTRODUCTION

In October 2025, Plaintiff Navid Safavi ("Plaintiff") filed this lawsuit under 8 U.S.C. § 1447(b) to compel Defendants (1) Pamela Bondi, then U.S. Attorney General; (2) Kristi Noem, then Secretary of the U.S. Department of Homeland Security ("DHS"); (3) Joseph Edlow, Director of U.S. Citizenship and Immigration Services ("USCIS"); and (4) David Lester, Director of the USCIS Santa Ana Field Office (collectively, "Defendants") to adjudicate his naturalization application.[1] (Dkt. 1.)

[1] Per Federal Rule of Civil Procedure 25(d), the persons currently holding these public offices are automatically substituted as parties.

Plaintiff filed his N-400 Application for Naturalization ("Naturalization Application") on August 22, 2023, and appeared for his naturalization on January 17, 2024, more than 120 days before this lawsuit commenced. (Dkt. 1 at 5-6.) 8 U.S.C. § 1447(b) authorizes this kind of lawsuit if USCIS does not decide a naturalization application within 120 days of the applicant's interview. The district court may: (1) determine the naturalization matter itself; or (2) "remand the matter, with appropriate instructions" to USCIS. 8 U.S.C. § 1447(b).

On July 27, 2026, Defendants filed a motion to remand this case to USCIS. (Dkt. 23.) Plaintiff opposed (Dkt. 24) and Defendants replied (Dkt. 25). Defendant's reply attached a Notice of Intent to Deny ("NOID") Plaintiff's Naturalization Application from USCIS. (Dkt. 25-1.)

The Court issued an order remanding the case to USCIS on September 2, 2026. ("Prior Order" at Dkt. 27.) In doing so, the Court ordered USCIS to determine Plaintiff's Naturalization Application within thirty days. (Id. at 7.) The Court also issued the following instructions:

> If USCIS denies Plaintiff's Naturalization Application for the reasons stated in the NOID, then USCIS shall explain in writing: (1) why the alleged nondisclosure was material, despite Plaintiff's earlier disclosure of his military service on the Student Visa Application; (2) what weight USCIS gave to Plaintiff's explanation (e.g., oversight rather than purposeful evasion) and why; and (3) how (if at all) the denial of the Naturalization Application affects Plaintiff's status as a lawful permanent resident.

(Id. at 8.) The Court stayed the case and ordered the parties to file a joint status report by October 16, 2026. (Id.)

The parties filed their joint status report on October 16, 2026. (Dkt. 28.) Defendants ask the Court to dismiss Plaintiff's claim as moot because USCIS adjudicated the Naturalization Application on October 1, 2026, in accordance with

the Court's instructions. (Id. at 7.) Defendants also argue that, because the Court remanded the case to USCIS, it cannot resume adjudication of this issue. (Id.) Plaintiff disagrees, arguing that Defendants did not comply with the Court's instructions on remand, permitting the Court to retain jurisdiction. (Id. at 5.) Plaintiff asks the Court to vacate USCIS's adjudication of his Naturalization Application and setting a schedule to determine Plaintiff's application under 8 U.S.C. § 1447(b). (Id. at 5.)

## II. RELEVANT BACKGROUND

The Court incorporates the relevant background section from its Prior Order. (Prior Order at 2-4.)

## III. LEGAL STANDARD

USCIS is responsible for adjudicating naturalization applications. 6 U.S.C. § 271(b)(2). If USCIS fails to adjudicate a naturalization application within 120 days of the date on which USCIS first interviewed the applicant,

> the applicant may apply to the United States district court for the district in which the applicant resides for a hearing on the matter. Such court has jurisdiction over the matter and may either determine the matter or remand the matter, with appropriate instructions, to [USCIS] to determine the matter.

8 U.S.C. § 1447(b); see also United States v. Hovsepian, 359 F.3d 1144, 1161 (9th Cir. 2004) (Section 1447(b) "specifies a consequence for failure to meet [the 120-day] deadline, namely, that the district court gains jurisdiction over the matter (upon the applicant's request) until the district court decides the case or exercises its discretion to remand the matter to [USCIS]."); Yith v. Nielsen, 881 F.3d 1155, 1159 (9th Cir. 2018) (same).

Section 1447(b) and case law are relatively silent when it comes to how and when a court may reassert jurisdiction over an application for naturalization after remanding the case with instructions. However, district courts in the Ninth Circuit

tend not to vacate a remand when a plaintiff challenges the merits of USCIS's, so long as the defendants do not violate the instructions given by the court. See, e.g., Zawahreh v. Noem, 5:25-cv-01773-SSS-SPx, 2026 WL 56214, at *2 (C.D. Cal. Feb. 24, 2026) (refusing to vacate a remand when the plaintiff alleged that USCIS was acting in bad-faith because doing so would be a "merits-based, outcome-determinative" posture and USCIS has discretion to grant or deny the application after remand); Davijani v. United States Citizenship and Immigr. Servs., No. 5:25-cv-07166-BLF, 2025 WL 3197872, at *1 (N.D. Cal. Oct. 17, 2025) (stating that the decision to remand a case is within the Court's discretion, but the agency has sole discretion to grant or deny an application once remanded).

However, it cannot be that, once a district court remands a case to USCIS with "appropriate instructions," that it loses jurisdiction to enforce the instructions it gave. Such an interpretation would render the text of the statute entirely meaningless. 8 U.S.C. § 1447(b); see also Hovsepian, 359 F.3d at 1160 ("Section 1447(b) allows the district court, in lieu of the first option of 'determin[ing] the matter,' to 'remand the matter' with instructions that, presumably, the [USCIS] is required to heed").

**IV. DISCUSSION**

The Court remanded determination of Plaintiff's Naturalization Application back to USCIS with instructions. If USCIS abided by those instructions, then the Court cannot, at this moment, vacate the NOD even if the Court disagrees with the merits of that determination. This does not prevent Plaintiff from petitioning the Court for de novo review of the denial after exhausting his administrative remedies. 8 U.S.C. § 1421(c); Wang v. Curda, No. 17-cv-01277-SVW-FFM, 2018 U.S. Dist. LEXIS 245358, at *6, 2018 WL 11359167, at *2 (C.D. Cal. Jan. 30, 2018) ("if USCIS denies Petitioner's application, then Petitioner retains the right, after she exhausts the available administrative remedies, to petition this Court for de novo review of USCIS's denial"); Zawahreh, 2026 WL 562141, at *2 ("If

Plaintiff's Application for Naturalization is ultimately denied, she may seek judicial review after a hearing before an immigration officer").

The Court examines whether USCIS followed the instructions given in the Prior Order. Since USCIS issued an NOD denying Plaintiff's Naturalization Application based on the reasons given in the NOID, those instructions required USCIS to explain (1) why the alleged nondisclosure of military service was material; (2) what weight USCIS gave to Plaintiff's explanation and why; and (3) how the denial affects Plaintiff's status as a lawful permanent resident.[2] (Prior Order at 8.)

**A. Why the Nondisclosure Was Material.**

USCIS claims that Plaintiff materially and willfully misrepresented his prior military service in his Form I-485 application to become a lawful permanent resident ("Permanent Residence Application"). (Dkt. 28 at 13.) The NOD states that such a misrepresentation rendered Plaintiff inadmissible under 8 U.S.C. § 1182(a)(6)(C)(i) at the time of his admission for permanent residence. (Id. at 17.) Because lawful admission for permanent residence is necessary to qualify for naturalization, USCIS denied Plaintiff's Naturalization Application. (Id.)

A misrepresentation is material if it "has the natural tendency to affect" the USCIS decision. (Id. at 13 (quoting Kungys v. United States, 485 U.S. 759 (1988).) In other words, the misrepresentation must have a "natural tendency to produce the conclusion that the applicant was qualified." Id. at 771-72; Ngamfon v. United States Dep't of Homeland Sec., 349 F.Supp.3d 975 (C.D. Cal. 2018) (same); Melara v. Mayorkas, 663 F.Supp.3d 1158 (C.D. Cal. 2021).

The NOD refers to three questions in his Permanent Residence Application which Plaintiff answered no to: (1) "Have you **EVER** been a member of, involved

---

[2] The Court also instructed USCIS to adjudicate the Naturalization Application within thirty days, which it did.

in, or in any way associated with any organization, association, fund, foundation, party, club, society, or similar group in the United States or in any other location in the world including any military service?" (2) "Have you **EVER** received any type of military, paramilitary, or weapons training?" and (3) "Have you **EVER** served in, been a member of, assisted, or participated in any military unit, paramilitary unit, police unit, self-defense unit, vigilante unit, rebel group, guerilla group, militia, insurgent organization, or any other armed group?" (Dkt. 28 at 11.)

The NOD states that disclosure of foreign military service, or the nondisclosure there of, is material because "it may implicate other grounds of inadmissibility." (Id. at 14.) In explaining that decision, the NOD states the following:

> For example, INA § 212(a)(3)(B) may apply to an alien who has received military-type training from or on behalf of a designated terrorist organization; INA § 212(a)(3)(D) addresses current or former affiliation with the Communist or any other Totalitarian party; and INA § 212(a)(3)(E) addresses participation in genocide, acts of torture or extrajudicial killing.

(Id.) The NOD reasons that, by answering no to the above questions and misrepresenting his military service, Plaintiff closed off a line of inquiry to determine Plaintiff's admissibility as a permanent resident. (Id. at 13.) The NOD goes on to say that the Iranian Islamic Revolutionary Guard Corps ("IRGC"), the military in which Plaintiff served, is "associated with serious human rights concerns." (Id. at 14.)

Plaintiff argues that the NOD fails to affirmatively state that disclosure of his military service would implicate a reason to deny his permanent residence, only that it "may." (Id. at 3.) Plaintiff also argues that the IRGC was not designated a terrorist organization in 2003, when Plaintiff served, nor was it designated as a terrorist organization when Plaintiff was admitted as a permanent resident. (Id.)

Plaintiff also argues that the NOD relied on information which Plaintiff was not aware of, such as a discrepancy between Plaintiff's answer in an inspection in 2009 when Plaintiff entered for his student visa, identifying the hospital Plaintiff worked at as "Jamaran Military Hospital," and Plaintiff's naturalization interview, where Plaintiff identified the hospital as "Jamaran Hospital." (Id. at 3-4.)

As insignificant as those discrepancies may be, the relevant misrepresentations in this case are not the ones made on Plaintiff's naturalization application or during his naturalization interview. The NOD, and the NOID, list the reason for rejection as the fact that Plaintiff was not lawfully admitted for permanent residence in 2018 because of material misrepresentations made when applying for permanent residence. (Dkt. 25-1 at 3; Dkt. 28 at 7-8.) The materiality finding in the NOD is based on the misrepresentations made in the three questions on the Permanent Residence Application.

It may also be true that the IRGC was not a terrorist organization at the time Plaintiff applied for permanent residence. However, the NOD states that the IRGC is associated with human rights concerns, not that it necessarily was a designated terrorist organization. (Dkt. 28 at 14.) The NOD has also explained that disclosure of the misrepresentation need not be disqualifying, nor would later discovery of the disclosure make the misrepresentation immaterial, only that it would shut off a relevant line of inquiry that may have made Plaintiff's admission as a permanent resident less likely. (Id. at 13.)

At this stage after remand, the Court cannot reassert jurisdiction over a naturalization determination even if it disagrees with the merits and outcome of USCIS's determination, unless USCIS fails to follow the Court's remand instructions. While Plaintiff raises several strong points regarding the merits of the NOD's materiality determination, USCIS did explain why it considered Plaintiff's misrepresentations to be material.

**B. The Weight Given to Plaintiff's Explanation.**

The Court instructed USCIS to explain what weight was given to Defendant's explanation regarding his misrepresentations and why. The NOD addresses Plaintiff's response to the NOID, identifying Plaintiff's explanation to be: (1) Plaintiff answered no to the question "have you EVER served in, been a member of, assisted, or participated in any military unit, paramilitary unit, police unit, self-defense unit, vigilante unit, rebel group, guerilla group, militia, insurgent organization, or any other armed group?" because the "question reads scary"; and (2) Plaintiff did not consider his "desk job of calculating payroll to be a military unit," quoting Plaintiff as stating that he thinks "'military unit' refers to soldiers. I was never a soldier…"[3] (Dkt. 28 at 15.)

The NOD then states that Plaintiff answered "no" to questions about military service and training in both his Naturalization Application and naturalization interview. (Id. at 16.) The NOD found this inconsistent with Plaintiff's answers when obtaining a student visa, where he disclosed his prior military service including prior military training and the fact that Plaintiff's military card said "soldier" on it. (Id.) The NOD then reasons that Plaintiff's "explanation that Question 55 on Form I-485 'reads scary' does not account for [Plaintiff's] negative responses to other question on [his] Form I-485…" (Id.)

Plaintiff argues that USCIS failed to explain the weight given to Plaintiff's explanation because it never decided "whether his answer was an oversight or purposeful evasion." (Id. at 4.) In part, Plaintiff's argument challenges USCIS's determination that his misrepresentation was willful while also stating that his application fails regardless of whether it was willful. (Id.) Plaintiff's argument also contends that USCIS gave no weight to the fact that Plaintiff clarified his

---

[3] The NOD refers to an explanation given by Plaintiff in his response to the NOID (Dkt. 28 at 15), although this response was never filed with the Court.

answers at his naturalization interview and that it did not discuss the letter of support from Plaintiff's employer (after acknowledging that it was submitted as evidence in response to the NOID). (Id.)

As with the materiality explanation, as valid or invalid as Plaintiff's criticisms of the merits of USCIS's decision or the quality of the explanations are, the NOD did explain the weight it attached to Plaintiff's explanation and why. Specifically, the NOD identified that it did not give much weight to Plaintiff's explanation because it did not explain why he misrepresented his prior service in other questions with less "scary" language, and that it was inconsistent with Plaintiff's prior answers given during his student visa interview and his rank on his military card.

### C. How Denial of Plaintiff's Naturalization Application Affects His Permanent Resident Status.

Because the NOID listed Plaintiff's unlawfully obtained permanent resident status as a reason for USCIS's intent to deny Plaintiff's Naturalization Application, the Court instructed USCIS to explain how a denial would affect Plaintiff's status as a lawful permanent resident. (Dkt. 17 at 8.)

USCIS denied Plaintiff's Naturalization Application because he "appear[s] to have been unlawfully admitted for permanent residence." (Dkt. 28 at 17.) At the same time, USCIS states that this denial "only means that [Plaintiff] do[es] not qualify for naturalization at this time." (Id.) It "does not terminate [Plaintiff's] lawful permanent status" and Plaintiff may "continue to live and work in the United States subject to the laws and requirements that apply to lawful permanent residents." (Id.)

USCIS provides no additional information and cites no further support in its NOD or in the status report. It is particularly perplexing how the basis for the denial of Plaintiff's Naturalization Application is that he was unlawfully admitted as a permanent resident while also maintaining that Plaintiff remains a lawful

permanent resident. Plaintiff points out that USCIS's explanation does not say whether they intend to deport Plaintiff or separate Plaintiff from his family. (Id. at 5.)

However, USCIS did explain that denial of Plaintiff's Naturalization Application has no effect on his lawful permanent resident status, even if that explanation is unsatisfying. That it undermines USCIS's naturalization determination is a merits issue over which the Court does not have jurisdiction, although Plaintiff may petition the Court for review of this denial in accordance with 8 U.S.C. § 1421(c). In deciding this matter, the Court relies heavily on USCIS's affirmative statement in the NOD that Plaintiff's lawful permanent resident status is "*not terminated*," and that he "*continues to remain a lawful permanent resident*." (Dkt 28 at 17.) The Court also relies on USCIS's confirmation in the joint status that "[the NOD] states that denial of the N-400 does not terminate Plaintiff's lawful permanent resident status; that Plaintiff remains a lawful permanent resident; and that he may continue to live and work in the United States, subject to the laws and requirements applicable to lawful permanent residents." (Id. at 6.)

## V. CONCLUSION

For these reasons, Defendants' request to dismiss this case as moot is GRANTED. The Court grants Defendants' request based on USCIS's representation that Plaintiff's lawful permanent resident status remains effective and will not be terminated based on the misrepresentations alleged in the NOD.

DATED: October 26, 2026

Karen E. Scott

KAREN E. SCOTT
UNITED STATES MAGISTRATE JUDGE